**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

KENSON GILBERT,

        Petitioner,

    v.

ERIC HOLDER, Jr., et al.,

        Respondents.

Civil Action No. 11-2608 (DMC)

**OPINION**

**APPEARANCES:**

Petitioner pro se
Kenson Gilbert
Essex County Correctional Cetner
354 Doremus Avenue
Newark, NJ 07105

**CAVANAUGH**, District Judge

    Petitioner Kenson Gilbert, an alien detained in connection with removal proceedings and currently confined at Essex County Correctional Center in Newark, New Jersey, has submitted a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241[1] and an application for leave to proceed in forma

---

[1] Section 2241 provides in relevant part:

(a) Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions.
(c) The writ of habeas corpus shall not extend to a prisoner unless-- ... (3) He is in custody in violation of the Constitution or laws or treaties of the United States ... .

pauperis. The respondents are U.S. Attorney General Eric Holder, Jr., and John Tsoukaris, Acting Director of the Bureau of Immigration and Customs Enforcement.

Based on Petitioner's affidavit of indigence, this Court will grant Petitioner leave to proceed in forma pauperis. Because it appears from a review of the Petition that Petitioner is not entitled to relief at this time, the Petition will be dismissed. See 28 U.S.C. § 2243.

## I. BACKGROUND

Petitioner asserts that he is a native and citizen of Trinidad and Tobago who entered the United States in 1990. On or about April 3, 2006, Petitioner pleaded guilty in this Court to Conspiracy to Commit Bank Fraud in violation of 18 U.S.C. § 371. See United States v. Gilbert, Criminal No. 03-0349 (D.N.J.).[2]

On or about January 11, 2010, Petitioner was detained and served with a Notice to Appear to respond to charges that he was removable. On or about March 3, 2010, Petitioner appeared in immigration court, conceded removability, and applied for withholding of removal under the Convention Against Torture. By

---

[2] This Court will take judicial notice of the dockets of this and other federal courts in cases related to this Petition. See Fed.R.Evid. 201; Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd., 181 F.3d 410, 426-27 (3d Cir. 1999) (federal court, on a motion to dismiss, may take judicial notice of another court's opinion, not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity).

Order of the Immigration Judge dated November 18, 2010, it was ordered that Petitioner be removed to Trinidad and Tobago on the charge contained in the Notice to Appear and that all applications for relief from removal be denied.

Petitioner states that he unsuccessfully appealed the decision of the Immigration Judge. Petitioner does not state the date of the decision by the Board of Immigration Appeals, which was presumably some time after November 18, 2010, and no later than May 2, 2011, when this Petition was dated. On or about May 12, 2011, Petitioner filed a Petition for Review of the removal decision in the Court of Appeals for the Third Circuit. See Gilbert v. Attorney General, No. 11-2262 (3d Cir.). On May 25, 2011, the Court of Appeals denied Petitioner's request for a stay of removal. On August 24, 2011, the Court of Appeals dismissed the petition for review for failure to prosecute.

On May 2, 2011, Petitioner filed this Petition for writ of habeas corpus, in which he challenges his prolonged detention in connection with removal proceedings. In support of his Petition, Petitioner relies upon Demore v. Kim, 538 U.S. 510 (2004) (relating to constitutionality of pre-removal-order detention), and Zadvydas v. Davis, 533 U.S. 678 (2001) (relating to constitutionality of post-removal-order detention).

3

## II. STANDARDS FOR A SUA SPONTE DISMISSAL

United States Code Title 28, Section 2243 provides in relevant part as follows:

> A court, justice or judge entertaining an application for a writ of habeas corpus shall forthwith award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled thereto.

A pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers. Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972). A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance. See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989); United States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert. denied, 399 U.S. 912 (1970). Nevertheless, a federal district court can dismiss a habeas corpus petition if it appears from the face of the petition that the petitioner is not entitled to relief. See Lonchar v. Thomas, 517 U.S. 314, 320 (1996); Siers v. Ryan, 773 F.2d 37, 45 (3d Cir. 1985), cert. denied, 490 U.S. 1025 (1989). See also 28 U.S.C. §§ 2243, 2255.

## III. ANALYSIS

Petitioner here challenges both his pre-removal-order detention and his post-removal-order detention.

4

Under 8 U.S.C. § 1226(c), the Attorney General is required to detain certain deportable aliens, including those who have been convicted of an aggravated felony or of violating a state law relating to a controlled substance, during their removal proceedings ("pre-removal-order detention"). Although § 1226(c) does not provide for bail, an alien detained pursuant to § 1226(c) may move for a Joseph hearing to determine if he falls within the categories of aliens subject to mandatory detention. In re Joseph, 22 I.&N. Dec. 799 (BIA 1999).[3]

In Demore v. Kim, 538 U.S. 510 (2003), the Supreme Court considered whether mandatory pre-removal-order detention under § 1226(c) violates due process. In the case of an alien who conceded that he fell within the categories of deportable aliens subject to mandatory detention under § 1226(c), the Supreme Court found that detention of deportable criminal aliens pending their removal proceedings did not violate due process. 538 U.S. at 531. The Court noted that such proceedings typically last only a few months and that pre-removal-order detention has a finite termination point - issuance of a final decision on removability. 538 U.S. at 529-530. In his concurrence, however, Justice Kennedy took the position that circumstances could arise in which

---

[3] At the Joseph hearing, a detainee may avoid mandatory detention by demonstrating that he is not an alien, was not convicted of the predicate crime, or that the BICE is otherwise substantially unlikely to establish that he is in fact subject to mandatory detention. See 8 C.F.R. § 3.19(h)(2)(ii).

long-term pre-removal-order detention might violate due process. 538 U.S. at 532-33 (Kennedy, J., concurring).

Taking note of Justice Kennedy's guidance, the Court of Appeals for the Third Circuit has held that there are due process limitations on the duration of pre-removal-order detention.

> Under the Supreme Court's holding [in Demore], Congress did not violate the Constitution when it authorized mandatory detention without a bond hearing for certain criminal aliens under § 1226(c). This means that the Executive Branch <u>must</u> detain an alien at the beginning of removal proceedings, without a bond hearing -- and may do so consistent with the Due Process Clause -- so long as the alien is given some sort of hearing when initially detained at which he may challenge the basis of his detention. [This is the Joseph hearing.] However, the constitutionality of this practice is a function of the length of the detention. At a certain point, continued detention becomes unreasonable and the Executive Branch's implementation of § 1226(c) becomes unconstitutional unless the Government has justified its actions at a hearing inquiring into whether continued detention is consistent with the law's purposes of preventing flight and dangers to the community. This will necessarily be a fact-dependent inquiry that will vary depending on individual circumstances. We decline to establish a universal point at which detention will always be considered unreasonable.
>
> . . .
>
> In short, when detention becomes unreasonable, the Due Process Clause demands a hearing, at which the Government bears the burden of proving that continued detention is necessary to fulfill the purposes of the detention statute.

<u>Diop v. ICE/Homeland Security</u>, 656 F.3d 221, 232-33 (3d Cir. 2011) (footnotes omitted).

Turning to the question of when pre-removal-order detention becomes "unreasonable," the Court of Appeals noted that the petitioner in Demore had been detained only six months, only slightly longer than the average length of pre-removal-order detention in contested cases, when his petition was decided. The Court agreed with the government that the reasonableness determination must take into account a given individual detainee's need for more or less time, as well as the exigencies of a particular case, but also held that the reasonableness enquiry must take into account errors in the proceedings that cause unnecessary delay. In Diop, the Court concluded that the petitioner's 35-month detention period, extended by the immigration judge's numerous errors and the government's failure to secure, at the earliest possible time, evidence that bore directly on the issue of whether Diop was properly detained, was unreasonably long.

Before he filed this Petition, however, based upon Petitioner's allegations, a final order of removal had been entered against Petitioner.[4] Because a final order of removal

---

[4] An order of removal becomes administratively final:

(a) Upon dismissal of an appeal by the Board of Immigration Appeals;
(b) Upon waiver of appeal by the respondent;
(c) Upon expiration of the time allotted for an appeal if the respondent does not file an appeal within that time;
(d) If certified to the Board or Attorney General, upon

has been entered, Petitioner is no longer detained pursuant to § 1226(c), which governs only detention <u>prior to</u> the entry of a final order of removal. Instead, Petitioner is now detained pursuant to 8 U.S.C. § 1231(a), which governs the detention and removal of an alien subject to a final order of removal ("post-removal-order detention").

Because Petitioner is no longer detained pursuant to § 1226(c), the challenge to his pre-removal order detention has become moot.[5] As there is no longer a live "case or controversy"

---

> the date of the subsequent decision ordering removal;
> (e) If an immigration judge orders an alien removed in the alien's absence, immediately upon entry of such order; or
> (f) If an immigration judge issues an alternate order of removal in connection with a grant of voluntary departure, upon overstay of the voluntary departure period, or upon the failure to post a required voluntary departure bond within 5 business days. If the respondent has filed a timely appeal with the Board, the order shall become final upon an order of removal by the Board or the Attorney General, or upon overstay of the voluntary departure period granted or reinstated by the Board or the Attorney General.

8 U.S.C. § 1241.1.

[5] Because a final order of removal has now been issued against Petitioner, it is not likely that he will be detained ever again under the pre-removal-order detention provision. Thus, this is not the type of case subject to the mootness exception for cases that are "capable of repetition" while "evading review." See <u>De La Teja v. United States</u>, 321 F.3d 1357, 1361-63 (11th Cir. 2003). This exception applies only when "(1) the challenged action [is] in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party [will] be subjected to the same action again." <u>Weinstein v. Bradford</u>, 423 U.S. 147, 149 (1975) (per curiam).

regarding Petitioner's pre-removal order detention, see U.S. Constitution, Article III, the challenge to Petitioner's pre-removal-order detention will be dismissed. See Rodney v. Mukasey, 340 Fed.Appx. 761 (3d Cir. 2009).

Post-removal-order detention is governed by 8 U.S.C. § 1231(a). Section 1231(a)(1) requires the Attorney General to attempt to effectuate removal within a 90-day "removal period."

> The removal period begins on the latest of the following:
>
> (i) The date the order of removal becomes administratively final.
> (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
> (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B).

Section 1231(a)(6) permits continued detention if removal is not effected within 90 days. However, the Supreme Court has held that such post-removal-order detention is subject to a temporal reasonableness standard. Specifically, once a presumptively-reasonable six-month period of post-removal-order detention has passed, a detained alien must be released if he can establish that his removal is not reasonably foreseeable. See Zadvydas v. Davis, 533 U.S. 678 (2001); Clark v. Martinez, 543 U.S. 371 (2005).

9

Thus, the alien bears the initial burden of establishing that there is "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," after which the government must come forward with evidence to rebut that showing. Zadvydas, 533 U.S. at 699-701. But see 8 U.S.C. § 1231(a)(1)(C) ("The removal period shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal.")

In addition, in assessing whether an alien has made the required showing, it must be remembered that, while the Supreme Court in Zadvydas emphasized that the expiration of the six-month presumptively-reasonable period of detention did not mandate release, it also stated that as the period of detention grows "what counts as the 'reasonably foreseeable future' conversely shrinks." 533 U.S. at 701.

Here, the applicable removal period began to run on the date the order of removal became administratively final.[6] As noted previously, Petitioner did not provide the date of the BIA's

---

[6] Although Petitioner filed a petition for review, the Court of Appeals did not order a stay of removal. Accordingly, the date of the Court of Appeals's final order does not trigger the running of the removal period. See 8 U.S.C. § 1231(a)(1)(B)(ii).

10

order, which must, however, have been sometime after November 18, 2010, and on or before May 2, 2011.[7]

To state a claim under Zadvydas, the six-month presumptively-reasonable removal period must have expired at the time the Petition is filed; a prematurely filed petition must be dismissed without prejudice to the filing of a new Petition once the removal period has expired. See, e.g., Rodney v. Mukasey, 340 Fed.Appx. 761 (3d Cir. 2009); Akinvale v. Ashcroft, 287 F.3d 1050, 1051 (11th cir. 2002). Thus, this claim is not yet ripe. See, e.g., Ferrer-chacon v. Department of Homeland Security, 2006 WL 3392930 (D.N.J. 2006). Here, as the presumptively-reasonable six-month removal period could not have expired by the time the Petition was filed on May 2, 2011, the challenge to Petitioner's post-removal-order detention will be dismissed as premature.

Moreover, Petitioner has alleged no facts to suggest that there is "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." Here, Petitioner has not suggested any individual barriers to his repatriation, see Zadvydas, 533 U.S. at 684-85 (alien petitioner Zadvydas was a "stateless" individual), nor any institutional

---

[7] The Court notes that a petition for review must be filed not later than 30 days after the date of the final order of removal. See 8 U.S.C. § 1252(b)(1). Here, the petition for review was filed on or about May 12, 2011, suggesting that the BIA's decision was issued on or after April 13, 2011, unless the petition for review was filed untimely.

11

barriers to his removal, see Zadvydas, 533 U.S. at 686 (alien petitioner Kim Ho Ma was from Cambodia, a country with which the United States has no repatriation agreement).

Instead, Petitioner appears to rely solely upon the passage of time as a grounds for relief. Federal courts disagree as to the extent to which the passage of time can suffice to meet the alien's burden. Compare Fahim v. Ashcroft, 227 F.Supp.2d 1359, 1365-68 (N.D. Ga. 2002) (mere passage of time insufficient to meet alien's burden of proof), with Seretse-Khama v. Ashcroft, 215 F.Supp.2d 37, 48-54 (D.D.C. 2002) (continued detention for over three years, coupled with eight-month delay since INS last contacted destination country, suffices to meet alien's burden); Lema v. U.S. I.N.S., 214 F.Supp.2d 1116, 1118 (W.D. Wash 2002), aff'd on other grounds, 341 F.3d 853 (9th Cir. 2003) (where destination country's lack of response to request for travel documents is combined with INS inability to explain silence and absence of any indication that situation may change, continued detention would be unreasonable but, where destination country's failure to respond suggests nothing more than "bureaucratic inertia," removal remains "foreseeable"). Here, where the passage of time is less than the six-month presumptively-reasonable removal period, it is patently not sufficient to suggest that Petitioner's post-removal-order detention has been unconstitutionally prolonged.

## IV. CONCLUSION

For the reasons set forth above, the challenge to Petitioner's pre-removal-order detention will be dismissed with prejudice, as moot. The challenge to Petitioner's post-removal-order detention will be dismissed as premature, without prejudice to Petitioner filing a new petition should circumstances later warrant.

An appropriate order follows.

Dated: 2/3/12

Dennis M. Cavanaugh
United States District Judge